

North America   Europe   Asia

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5875
ADLowell@winston.com

September 28, 2018

**VIA ECF**
Honorable Cathy Seibel, U.S. District Judge
The Honorable Charles L. Brieant, Jr. Courthouse
300 Quarropas Street, Courtroom 621
White Plains, NY 10601-4150

Re:     *Broidy Capital Management v. Benomar*, No. 18-CV-6615-CS-LMS
        **Pre-Motion Letter Re Motion to Dismiss**

Dear Judge Seibel:

Defendant Jamal Benomar intends to file a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiff Elliot Broidy ("Broidy"), who has had various criminal and civil legal issues[1] and who is reported to be under criminal investigation yet again,[2] brings a second lawsuit apparently aimed at deflecting attention from himself and continuing to align himself with foreign countries with whom he has or has had a financial relationship. This latest suit is against Jamal Benomar, a career diplomat who served in the UN for 25 years promoting human rights abroad[3] and is currently serving as a diplomat for his home country of Morocco.  Mr. Benomar intends to move for dismissal of the action on the grounds identified below.

***Diplomatic Immunity***: This action must be dismissed because Mr. Benomar is a member of the Permanent Mission of the Kingdom Morocco to the United Nations and is thus immune from jurisdiction

---

[1] Broidy was convicted of bribing officials in the New York State Comptroller Office.  *See* The Associated Press, *Guilty Plea in Fraud Case Tied to New York Pension,* N.Y. TIMES (Dec. 4, 2009), found at https://www.nytimes.com/2009/12/04/nyregion/04pension.html.

[2] *See GOP Fundraiser Broidy under Investigation for Alleged Effort to Sell Government Influence, People Familiar with Probe Say,* Wash. Post (Aug. 17, 2018), found at https://www.washingtonpost.com/politics/gop-fundraiser-broidy-under-investigation-for-alleged-effort-to-sell-government-influence-people-familiar-with-probe-say/2018/08/17/c9e55792-a185-11e8-8e87-c869fe70a721_story.html?utm_term=.aabfc0682247 (reporting the Justice Department is investigating whether Broidy is using his political connections and offering U.S. government action to foreign officials in exchange for tens of millions of dollars).

[3] Mr. Benomar has been entrusted with the most important and sensitive assignments. His career has taken him to Sarajevo, Rwanda, Afghanistan, Iraq and Yemen, the latter for which he served as a Special Envoy of the United Nation's Secretary General.



for actions performed in the course of his duties.  Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227; Diplomatic Relations Act ("DRA"), 22 U.S.C. §254d.

Under Articles 31 and 37 of the VCDR, diplomatic agents "enjoy immunity from [the receiving State's] civil and administrative jurisdiction" subject to narrow exceptions not relevant to this litigation, and mission staff enjoy that same immunity for acts performed in the "course of their duties." *See Swarna v. Al-Awadi*, 622 F.3d 123, 137 (2d Cir. 2010) ("Sitting diplomats are accorded near-absolute immunity in the receiving state to avoid interference with the diplomat's service for his or her government."); *cf Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) (affirming dismissal of a case against UN officials under Article 39 of the VCDR (residual immunity) because the Court determined that the allegations related to actions "performed in their official functions").  The DRA, which makes U.S. law consistent with the VCDR, requires mandatory dismissal once a court determines a party is immune under the VCDR. 22 U.S.C. §254d*; see also Brzak,* 597 F.3d at 113 (noting that the DRA "makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under" the VCDR).  To do otherwise is to disrespect the foreign State for which Mr. Benomar serves while simultaneously undermining the reciprocity on which basis such foreign State affords immunity to U.S. diplomats.

***Derivative Immunity*:** This case should also be dismissed because Mr. Benomar's alleged actions would be immune under the doctrine of derivative sovereign immunity. "Under the venerable principle of foreign sovereign immunity, foreign states are ordinarily 'immune from the jurisdiction of the courts of the United States.'" *Republic of Iraq* v. *Beaty*, 556 U.S. 848, 851 (2009) (quoting 28 U.S.C. § 1604). This immunity extends to foreign states' agents and contractors when their actions were done at the request of the sovereign. *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015).

In the first case Mr. Broidy filed, the U.S. District Court for the Central District of California recently granted Qatar's motion to dismiss a complaint predicated on the same operative facts as alleged in Plaintiffs' Complaint here.  The district court found Qatar immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), noting that the "FSIA establishes a fundamental rule that foreign sovereigns are not subject to the jurisdiction of the United States courts unless a specific statutory exception to immunity applies" and "Plaintiffs' claims against Qatar fall outside any applicable exception to the FSIA."  Qatar Order at 5 (Dkt. 198), CA Action.  Plaintiffs' Complaint alleges that the acts for which Mr. Benomar is allegedly liable were at the request or direction of Qatar and that he is a "secret and unregistered *agent*" of Qatar.  *See* Compl. ¶ 9 (emphasis added).  In fact, Plaintiffs rely almost exclusively in support of their allegations on telephone records reflecting communication by and between Mr. Benomar and Qatari leaders and its alleged agents. Compl. ¶¶ 46-48.

Because Mr. Benomar specifically counseled Qatar at the request of his home government of Morocco, Mr. Benomar enjoys derivative sovereign immunity not only based on Qatar's immunity as a sovereign, but on Morocco's immunity as a sovereign as well.  Consequently, this Court lacks subject matter jurisdiction, and the case must be dismissed, because the alleged actions of Mr. Benomar are protected under derivative sovereign immunity.

***Failure to State a Claim*:** Finally, this Court should dismiss the Complaint for the additional reason that Plaintiffs fail to state a claim upon which relief can be granted because the Complaint does not "contain



sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 557).

The California court noted the deficiencies in the Complaint and First Amended Complaint in that action, which closely track the Complaint at issue here: "Plaintiffs have failed to demonstrate a likelihood of success on the merits" because Plaintiffs failed to "provide admissible evidence demonstrating that any of the defendants . . . are responsible for the unauthorized access of Plaintiffs' email accounts or that any of the Defendants are in possession of or are responsible for disseminating the allegedly illegally-obtained emails and documents to various media outlets" (TRO Order at 2-3 (Dkt. 37), CA Action); "Plaintiffs have failed to sufficiently allege that the . . . Defendants committed any of the intentional acts, such as hacking Plaintiffs' computer systems or accounts or disseminating Plaintiffs' confidential and private information – that are at issue in this action." (Stonington Order at 8-9 (Dkt 209), CA Action); and "[t]he few scant allegations referring to the . . . Defendants are based on information and belief and Plaintiffs fail to allege any factual basis for any of these allegations." (Global Risk Order at 9 (Dkt. 212), CA Action).

Plaintiffs' allegations in this suit are overwhelmingly made on information and belief, are conclusory, and have no factual support that meets the plausibility standard. *See e.g.*, Compl. ¶¶ 9, 42, 43, 56, 58, 64, 67, 72, 73. The vast majority of the Complaint should be set aside as "no more than conclusions" that "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

The remaining allegations are "merely consistent with a defendant's liability" and "stop[] short of the line between possibility and plausibility." *Id.* at 662; *see also Arista Records*, 604 F.3d at 120 (noting that *Twombly* was properly dismissed because the "complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct"). Plaintiffs rely on Mr. Benomar's phone records in support of their Complaint because they reflect communications with alleged co-conspirators. A more plausible explanation for Mr. Benomar's communications is that Mr. Benomar properly and appropriately advised Qatar on foreign policy issues, as he was asked to do. Mr. Benomar's phone records—which do not reveal any content—do not move Plaintiffs' Complaint from possible to plausible, which is what is required under Fed. R. Civ. P. 8. The Complaint fails to state a claim upon which relief can be granted and should be dismissed.

Defendant's counsel will raise these issues with the Court on October 10th, as well as the concurrently filed pre-motion letter regarding Defendant's intention to move to stay discovery pending resolution of his motion to dismiss.

Respectfully,

/s/ Abbe David Lowell

Abbe David Lowell