

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5875
ADLowell@winston.com

September 28, 2018

**VIA ECF**
Honorable Cathy Seibel, U.S. District Judge
The Honorable Charles L. Brieant, Jr. Courthouse
300 Quarropas Street, Courtroom 621
White Plains, NY 10601-4150

**Re:** *Broidy Capital Management v. Benomar*, No. 18-CV-6615-CS-LMS
 **Pre-Motion Letter Re Motion to Stay Discovery**

Dear Judge Seibel:

Defendant Jamal Benomar intends to file a motion to stay discovery pending resolution of his forthcoming motion to dismiss.[1]

This Circuit has long held that district courts have the discretion to stay discovery pending resolution of a motion to dismiss. *Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 130 (2d Cir.1987); *see also* Fed. R. Civ. P. 26(c); *Chrysler Capital Corporation v. Century Power Corp.,* 137 F.R.D. 209, 211 (S.D.N.Y.1991). In determining whether to grant a motion to stay, courts consider: "(1) whether a defendant has made a strong showing that the plaintiffs claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Am. Fed'n of Musicians & Employers' Pension Fund v. Atl. Recording Corp.,* No. 15-CV-6267-GHW, 2016 WL 2641122, at *1 (S.D.N.Y. Jan. 8, 2016) (quoting *Negrete v. Citibank N.A.,* No. 15 CIV. 7250 (RWS*),* 2015 WL 8207466 (S.D.N.Y. Dec 7, 2015)).

Courts often grant motions to stay when the motion to dismiss has the potential to end the entire case. *See Boelter v. Hearst Commc'ns, Inc.,* No. 15-CV-03934 (AT), 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting motion to stay because "an initial review of the arguments presented in its support suggest that none are frivolous and, because succeeding on each argument alone may warrant dismissal of Plaintiffs entire complaint, ordering discovery to proceed at this time would result in an excessive burden on Defendant."); *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 75 (S.D.N.Y. 2013) (granting motion to stay "in the face of a seemingly strong motion to dismiss."); *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (granting motion to stay because Defendant has put forth "multiple, independent arguments for dismissal" and a stay "could avoid the need for costly and time-consuming discovery."). These factors weigh in favor of staying discovery in this case.

---

[1] Mr. Benomar has simultaneously filed a pre-motion letter regarding his intention to file a motion to dismiss.



*First*, Mr. Benomar's motion to dismiss not only has the potential to end the entire case, *see Boelter*, 2016 WL 361554, at *5, but actually *requires* dismissal. As a threshold matter, Mr. Benomar is a member of the Permanent Mission of the Kingdom of Morocco to the United Nations and thus is immune from suit. *See* 22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations ["(VCDR)"] … or under any other laws extending diplomatic privileges and immunities, shall be dismissed."). For this reason alone, Mr. Benomar's motion to dismiss should be granted and discovery rendered moot; s*ee also Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) ("The Diplomatic Relations Act of 1978, 22 U.S.C. § 254d, makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws 'extending diplomatic privileges and immunities.'").

Diplomatic agents are also immune from discovery, VCDR at Article 31(2) ("A diplomatic agent is not obliged to give evidence as a witness."), and mission staff enjoy that same immunity for actions performed in the course of their duties, VCDR at Article 37. To subject a diplomat to discovery before the issue of immunity is decided would be to prejudge, to the diplomat's detriment, his claim of immunity. The Supreme Court explains: "Until this threshold immunity question is resolved, discovery should not be allowed." *Anderson v. Creighton*, 483 U.S. 635, 653 n. 5 (1987); *see also NRP Holdings, LLC v. City of Buffalo*, No. 11-CV-472S(F), 2016 WL 6694247, at *1 (W.D.N.Y. Nov. 15, 2016) ("It is well-established that the purpose of immunity, *i.e.*, even if a party has engaged in actionable misconduct, the party is immune from both suit and liability, is to insulate a defendant from the expense and inconvenience associated with litigation of claims for which a defendant may, under applicable law, be immune."); *Complaint of Akropan Shipping Corp.,* No. 86 CIV. 4873 (JFK), 1990 WL 16097, at *2 (S.D.N.Y. Feb. 14, 1990).

Mr. Benomar is also entitled to derivative sovereign immunity pursuant to which the underlying action should be dismissed. *See Moriah v. Bank of China Ltd.,* 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015) ("It is well-settled law that contractors and common law agents acting within the scope of their employment ... have derivative sovereign immunity."). Plaintiffs expressly allege that Mr. Benomar acted as a Qatari agent. Compl. ¶ 9. Accepting Plaintiffs' allegations as true for purposes of the motion to dismiss, Qatar's immunity[2] extends to that of its agents and Mr. Benomar would be immune from suit. Alternatively, Mr. Benomar actually advised Qatar at the request and on behalf of Morocco. As such, Mr. Benomar is in fact immune from suit as an extension of Morocco's sovereign immunity. In all events, Mr. Benomar services are on behalf of a sovereign and the sovereign's immunity extends to him. *See generally Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (Courts extend "derivative immunity to private contractors" because "imposing liability on private agents of the government would directly impede the significant governmental interest in completion of its work.").

*Second*, Plaintiffs intend to pursue what is clearly broad and burdensome discovery. The best guide to the future is the past. Plaintiffs subpoenaed more than 80 persons and companies during a five-month period in the now-dismissed, near-identical case they brought in California. (Dkt. 17, 17-1). That they

---

[2] On August 8, 2018, the court in California granted Qatar's motion to dismiss on the basis that Qatar was immune from suit under the Foreign Sovereign Immunities Act. (Dkt. 198, California Action).



intend to stay aggressive in discovery has also been reflected in: (i) their request to this Court (before transfer to your Honor) to expedite discovery in this action, (ii) their representation to Defendants' counsel regarding a discussion with a court clerk in which they wrongly suggested that expedited discovery had been implicitly granted, (Dkt. 17) and (iii) their representation to this Court that they intend to collect evidence by "moving down a chain of third parties." (Dkt. 8). When asked the identities of the targets of their contemplated third-party discovery, Plaintiffs' counsel represented only that the discovery "would be a combination of electronic discovery and those individuals and organizations we believe have knowledge of the allegations in the complaint." (Dkt. 17-1). This is not a case of a plaintiff wishing to preserve the testimony of a dying witness or to pursue some equally discreet discovery.

Courts have recognized, especially in cases involving Government officials, that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). If any discovery proceeds, Mr. Benomar would be forced, to the detriment of Morocco *and* Qatar, to "participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to [his] position." *Id.* at 685-686.

*Third*, there is no risk of prejudice to Plaintiffs. Plaintiffs have conceded this case rests on identical operative facts as the California Action. They already had five months of discovery and subpoenaed more than 80 witnesses before the California court granted, in successive orders, the respective motions to dismiss by each of the served defendants. Plaintiffs brought the instant suit, with no basis in fact, as nothing more than a vehicle to continue its discovery bonanza to promote Plaintiff Broidy's public relations campaign against Mr. Benomar. Nor would a stay of discovery prejudice Plaintiffs given that Mr. Benomar's motion to dismiss is likely to end the case altogether in any event. *See Spinelli v. Nat'l Football League,* No. 13-CV-7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (A "stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue.") (citations omitted.).

In sum, there is far more than "good cause" to stay discovery pending resolution of Mr. Benomar's motion to dismiss. Any discovery at this stage is unreasonable because Mr. Benomar's motion to dismiss will end the litigation. Plaintiffs will seek broad discovery that will result in prejudice not only to Mr. Benomar, but to two sovereigns as well. Allowing discovery to proceed before Mr. Benomar's immunity status is decided will result in costly and time-consuming litigation over the proper scope of such discovery involving multiple persons. All of these factors weigh in favor of granting a motion to stay.

Defendant's counsel will raise these issues with the Court on October 10th.

Respectfully,

/s/ Abbe David Lowell

Abbe David Lowell