

October 4, 2018

**By ECF**
Hon. Cathy Seibel, U.S.D.J.
United States Courthouse
300 Quarropas Street (Courtroom 621)
White Plains, NY 10601-4150

Re:   *Broidy Capital Management LLC v. Benomar*, No. 18-CV-6615-CS
      **Plaintiffs' Response to Defendant's Pre-Motion Letter Re Motion to Dismiss**

Dear Judge Seibel:

Defendant's pre-motion letter seeking permission to file a motion to dismiss fails to disclose factors relevant to Defendant's claim to immunity because they are fatal to his claims. First, according to the United Nations, the Moroccan Mission to the U.N. retained Defendant as a consultant or advisor on August 1, 2018 – <u>after</u> the July 23, 2018 filing of this lawsuit.  And second, as of October 4, 2018, the State Department had not made any immunity determination regarding Defendant and was looking into his status, according to the United States Mission to the U.N. "The questions of the diplomatic status enjoyed by a given defendant and the immunity to be accorded him are [] questions where a determination of the Department of State is binding upon the court." *Arcaya v. Paez*, 145 F. Supp. 464, 467 (S.D.N.Y. 1956), *aff'd*, 244 F.2d 958 (2d Cir. 1957).

Defendant's participation in the conspiracy to hack and distribute Plaintiffs' electronic information was disclosed through discovery in an action in the Central District of California revealing that Defendant (with co-conspirators) targeted Plaintiffs and profited personally from the scheme.  Defendant's participation in the effort to target Plaintiffs is documented and acknowledged by his co-conspirators, one of whom stated he was "sure" Defendant "took the credit" for personally reviewing the hacked materials before they were distributed to the press.

As set forth below, Defendant's two immunity claims are without merit.  While Defendant's third asserted basis for a motion to dismiss is equally meritless, Plaintiffs suggest that rather than having Defendant proceed with such a motion at this time, Plaintiff should file an Amended Complaint on or before October 18 that, among other things, adds allegations based on the material that Plaintiffs obtained in discovery in the California action.

**Diplomatic Immunity:** Defendant asserts, without support, that he "is a member of the Permanent Mission of the Kingdom of Morocco to the United Nations and is thus immune from suit."[1]  Notably, Defendant is not listed as a member of the Moroccan Mission to the U.N. in the August 2018 "Blue Book" listing the members of all missions to the U.N.[2]  On October 1, 2018, the U.N. Office of Protocol and Liaison Service advised Plaintiffs' counsel that Defendant had

---

[1] An immunity defense was raised by Defendant's co-conspirators in the California action, but that court did not rule on that defense; Defendant's co-conspirators were dismissed simply for lack of personal jurisdiction. Further, a court in this District ordered one of Defendant's co-conspirators to respond to subpoenas and sit for a deposition. *Broidy Capital Management LLC v. Joseph Allaham*, 18-MC-00240-KBF (S.D.N.Y.) at ECF No. 4.

[2] *See* U.N. Protocol and Liaison Service, "Permanent Missions to the United Nations," August 2018, https://protocol.un.org/dgacm/pls/site.nsf/files/BB307/$FILE/bb307.pdf.



been retained by the Moroccan Mission as a "consultant or adviser" on August 1, 2018 – nine days after this lawsuit was filed.

Diplomatic immunity is only automatically conferred to the "principal resident representative" of a foreign mission and "a resident representative with the rank of ambassador or minister plenipotentiary," Headquarters Agreement, 61 Stat. 756 (1947), at Art. V § 15(1)-(2), and Defendant does not claim to have such a rank. While diplomatic immunity may also apply to "such resident members of their staffs as may be agreed upon between the Secretary-General, the Government of the United States and the Government of the Member concerned," *id*., that status has to be "agreed upon" by the United States and the U.N. To date, the U.S. government has not agreed to extend diplomatic immunity to the Defendant. "[F]or a staff member of the Mission to have full diplomatic immunity, the [U.S.] government must agree to grant diplomatic immunity to the specific individual." *Firemen's Ins. Co. of Washington D.C. v. Onwualia*, 94-CV-0095, 1994 WL 706994, at *3 (S.D.N.Y. Dec. 19, 1994).

If Defendant is asserting immunity under the International Organizations Immunities Act, he is entitled only to functional immunity: "Representatives of foreign governments in or to international organizations … shall be immune from suit and legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives. . . ." 22 U.S.C.A. § 288d(b).  "Functional immunity" would not preclude this action because it only confers "immunity to representatives of foreign governments to the United Nations for acts performed *within their functions as such representatives*." *U. S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 430 (S.D.N.Y. 1963) (emphasis added) (footnotes omitted). The conduct alleged in the Complaint—hacking computers of U.S. citizens—clearly does not fall within the functions of a U.N. representative.  Additionally, the allegations against Defendant relate to his commercial activities, undertaken for personal profit. In a deposition, one of Defendant's co-conspirators testified that their work was done for "money" and that he was considering suing the Defendant because the co-conspirator was owed "five to ten million." "No exemption from local jurisdiction is provided officials for acts in their private capacity." *United States v. Enger*, 472 F. Supp. 490, 503 (D.N.J. 1978) (citation omitted).[3] Defendant cites Article 31 of the Vienna Convention on Diplomatic Relations but that Convention does not provide immunity for an action "relating to any professional or commercial activity exercised by the diplomatic agent… outside his official functions." Vienna Convention on Diplomatic Relations Art 31(c) ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227.

**Derivative Immunity.** Defendant asserts derivative immunity because he claims to have performed acts related to the Plaintiffs for the State of Qatar "at the request of his home government of Morocco." If Defendant were in fact acting at the instigation of Morocco, it would make the dismissal of the State of Qatar from Plaintiffs' California action irrelevant. In any event, immunity under the Foreign Sovereign Immunities Act ("FSIA") is available only for a foreign state or its "agency or instrumentality." 28 U.S.C. § 1603(b)(2). Defendant does not purport to be such an entity and his reliance on *Republic of Iraq* v. *Beaty*, 556 U.S. 848, 851 (2009), is misplaced, since that case only states that a foreign state cannot ordinarily be sued in

---

[3] Moreover, it is not clear when Defendant is asserting he became immune from suit. Since the acts complained of in this action occurred before the Complaint was filed on July 23, 2018, any subsequent acquisition of functional immunity could not immunize Defendant's prior wrongful acts.



U.S. court. Moreover, the determination of when a foreign official has immunity is not governed by the FSIA but by the common law. *Samantar v. Yousuf,* 560 U.S. 305, 322–24 (2010). Under the common law, Courts recognize immunity for a foreign citizen working for a foreign state where: "(1) the foreign state requests it, and (2) the defendant acted in his official capacity on behalf of a recognized foreign government." *In re Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 188 (S.D.N.Y. 2015). Here, no foreign state has requested immunity, and Defendant has not shown he acted in an official capacity.[4]

**Failure to State a Claim**.  At the time the Complaint was filed, discovery from the California Action was either unavailable or its use was severely restricted in ways that are no longer applicable.  Plaintiffs, therefore, intend to file an Amended Complaint adding, among other things, more detailed allegations based on the documentary and other evidence now in their possession.  That evidence supports allegations that Defendant was personally involved in targeting Plaintiffs and that he personally participated in reviewing, categorizing, and preparing for dissemination unlawfully hacked documents in order to discredit Plaintiffs; and that he did so for his own pecuniary gain.[5] Defendant mischaracterizes the action that Plaintiffs had filed against others in the Central District of California. That case did not result in any rulings on the merits of Plaintiffs' claims, or dismissal of Defendant's co-conspirators on a derivative immunity theory.  The State of Qatar was dismissed from that action on sovereign immunity grounds, which order is now on appeal to the Ninth Circuit, and Defendant's co-conspirators were dismissed on personal jurisdiction grounds.  Far from being a tool for "deflecting attention," that action uncovered a global hacking conspiracy that targeted over 1,200 individuals and revealed Defendant's role in the attack on Plaintiffs.[6]

Plaintiffs suggest in the interests of judicial economy that rather than proceeding with Defendant's motion to dismiss at this time, Plaintiffs should file their Amended Complaint no later than October 18, and then Defendant can respond to that pleading.

    Respectfully submitted,

    *s/Lee S. Wolosky*
    Lee S. Wolosky

---

[4] Defendant's citation of *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272 (S.D.N.Y. 2015), is unavailing.  To begin with, that case involved whether a witness could be compelled to produce discovery, not whether a defendant should be dismissed.  In that case, the record included a sworn declaration concerning the witness' agency relationship with the sovereign.  Notwithstanding that fact, Judge Scheindlin ordered discovery into that relationship.  *Id.* at 274. Here, discovery is necessary for similar reasons.

[5] Defendant is engaged in other commercial activities while purportedly a government official.  For example, Defendant recently joined "the Supervisory Board of the French group Lagardère." *See The Economist,* "Moroccan Jamal Benomar on the Lagardère Supervisory Board," September 14, 2018. The largest shareholder in Lagardère is Qatar Holding LLC, part of Qatar's sovereign wealth fund, which had been "seeking representation on Lagardere's supervisory board." *See Reuters*, "Lagardere's top investor Qatar wins voting rights loyalty reward," May 3, 2017, https://www.reuters.com/article/lagardere-qatar-idUSL8N1I55NJ. Defendant's service on a private board for Qatar is inconsistent with his alleged service as a Moroccan diplomat.

[6] Eli Lake, "Russian Hackers Aren't the Only Ones to Worry About," *Bloomberg*, September 18, 2018, https://www.bloomberg.com/view/articles/2018-09-18/russian-hackers-aren-t-the-only-ones-to-worry-about.