

**By ECF**  October 12, 2018
Hon. Cathy Seibel, U.S.D.J.
United States Courthouse
300 Quarropas Street (Courtroom 621)
White Plains, NY 10601-4150

Re:   *Broidy Capital Management LLC v. Benomar,* No. 18-CV-6615
      **Recommendation to the State Department Regarding Defendant's Immunity**

Dear Judge Seibel:

I write further to the Court's direction that the parties confer regarding possible input from the U.S. Department of State ("State Department") concerning Defendant's newly-asserted claim to "full status immunity."  (October 10, 2018 Conference Tr. ("Tr.") at 3:15-16).

At the October 10, 2018 conference, Plaintiffs raised the issue of a State Department suggestion of immunity or other form of input with regard to Defendant's claim to status immunity. (*Id.* at 24:22). Counsel for Defendant stated that he would "confer with [Plaintiff's counsel] on it." (*Id.* at 26:20-21.) The Court directed that this conversation should take place "before the end of the week, because if one or the other of you is going to request that, I would suggest doing it even before the motion is formally filed because if they are going to take six weeks, then it won't hold us up." (*Id.* at 26:7-12).

To comply with the Court's direction, on October 11, 2018, counsel for Plaintiffs emailed counsel for Defendant stating: "In order to determine whether to recommend that the parties or the Court ask the State Department for its position on Mr. Benomar's immunity claim, Plaintiffs need to know the parameters and bases of his claim. …To that end, we would be grateful if you would specify Mr. Benomar's diplomatic rank, when that rank was conferred, when notice was provided to the United States, and what type of passport and U.S. visa Benomar uses to gain access to the United States." *See* Attachment A. On October 12, counsel for Defendant replied without providing this information and instead stating, among other things: "The information you are requesting is exactly that which the judge asked for and we will be presenting in the motion she has ordered filed on or before October 31." *See* Attachment B.

Plaintiffs are generally of the view that the views of the State Department could be of use to this court, and may in fact be dispositive of some of Defendant's claims.[1] However, absent basic

---

[1] Defendant claims to rely on an interpretation of the Vienna Convention on Diplomatic Relations, and courts have held that in interpreting that treaty, "[s]ubstantial deference is due to the State Department's conclusion." *Tabion v. Mufti*, 73 F.3d 535, 538 (4th Cir. 1996). Further, "questions of the diplomatic status enjoyed by a given defendant and the immunity to be accorded him are … questions where a determination of the Department of State is binding upon the court." *Arcaya v. Paez*, 145 F. Supp. 464, 467 (S.D.N.Y. 1956), *aff'd*, 244 F.2d 958 (2d Cir. 1957) (concerning status immunity). In addition, in reviewing a claim to diplomatic immunity, a Court will look to whether "the State Department has a record that [the foreign state] ever



information about the basis for Defendant's claim to status immunity, Plaintiffs are unable to form an informed view about State Department involvement at the present time. That is especially so because not only are Defendant's claims to status immunity both new and entirely unsupported, they are also contrary to the public record, information provided by the U.S. State Department to Plaintiff's counsel and Defendant's own September 28, 2018 pre-motion letter.

In Defendant's pre-motion letter of September 28, 2018, counsel asserted functional (or "official acts") immunity based on Benomar's purported role as a member of the Moroccan mission to the U.N. That letter stated that "Mr. Benomar is a member of the Permanent Mission of the Kingdom Morocco to the United Nations and is thus immune from jurisdiction *for actions performed in the course of his duties*." (ECF 25) (emphasis added).

Plaintiffs' letter of October 4, 2018 showed that the claim that Mr. Benomar was a member of the Moroccan mission to the United Nations was contrary to the public record: "Defendant is not listed as a member of the Moroccan Mission to the U.N. in the August 2018 "Blue Book" listing the members of all missions to the U.N." (ECF 27). Plaintiffs' letter also made clear that, in any event, the United States would be required to consent to such status. Finally, Plaintiffs made clear that official acts immunity obtained after this lawsuit was filed could not possibly provide immunity for acts committed prior to such time as Mr. Benomar enjoyed any official function. "Representatives of foreign governments in or to international organizations … shall be immune from suit and legal process relating to acts performed by *them in their official capacity* and falling within their functions as such representatives. . . ." 22 U.S.C.A. § 288d(b) (emphasis added). "Functional immunity" only provides "immunity to representatives of foreign governments to the United Nations for acts performed *within their functions as such representatives*." *U. S. ex rel. Casanova v. Fitzpatrick*, 214 F. Supp. 425, 430 (S.D.N.Y. 1963) (emphasis added).

So, at the October 10 hearing, Defendant switched gears and adopted a new theory: Rather than claiming functional immunity "for actions performed in the course of his duties" (ECF 25), Defendant now claims that he "fits into the category of being a full-blown diplomat for purposes of full status immunity, as opposed to being at a category for which the only immunity would depend on whether his actions were as part of his duties" (Tr. at 3:15-18). Whereas only days prior, Defendant's purported immunity stemmed from his new position as a member of the Moroccan Mission to the United Nations, on October 10, for the first time, the immunity existed both "from the moment he left the United Nations [in 2017] and beforehand."[2]

---

notified Defendant as a 'member of its bilateral mission (embassy) or any consulate in the United States'" and whether the Defendant has "furnished the Court with any proof that the State Department accredited him as a member of any mission." *United States v. Kuznetsov*, 442 F. Supp. 2d 102, 107 (S.D.N.Y. 2006) (denying status immunity)."Courts have continued to find that recognition and certification by the State Department is necessary to establish diplomatic immunity." *Id.*; *see also In re Baiz,* 135 U.S. 403, 421, 10 S.Ct. 854, 34 L.Ed. 222 (1890) ("the certificate of the Secretary of State ... is the best evidence to prove the diplomatic character of a person." *In re Baiz,* 135 U.S. 403, 421, 10 S.Ct. 854, 34 L.Ed. 222 (1890).



One last sudden reversal bears mention. In his September 28 letter, Defendant claimed that the "case should also be dismissed because Mr. Benomar's alleged actions would be immune under the doctrine of derivative sovereign immunity" and that "the alleged actions of Mr. Benomar are protected under derivative sovereign immunity." (ECF 25). On October 10 counsel for Defendant made the extraordinary claim that "I have not indicated [that derivative immunity] is the one that dictates what happens." (Tr. at 9:4–5).

These inconsistencies, along with the basis for Defendant's bald assertion of immunity, need to be addressed by Defendant's counsel. After the Defendant has filed the Rule 12(b)(1) motion and informed the Court and Plaintiffs about the basis for Benomar's claim to immunity, Plaintiffs will advise the Court as to whether we will request or recommend seeking the position of the State Department.

                                                 Respectfully submitted,

                                                 */s/ Lee S. Wolosky*
                                                 Lee S. Wolosky