

North America   Europe   Asia

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5875
ADLowell@winston.com

October 13, 2018

**VIA ECF**
Honorable Cathy Seibel, U.S. District Judge
The Honorable Charles L. Brieant, Jr. Courthouse
300 Quarropas Street, Courtroom 621
White Plains, NY 10601-4150

**Re:** *Broidy Capital Management v. Benomar*, No. 18-CV-6615-CS-LMS
   **Response To Plaintiffs' Status Letter**

Dear Judge Seibel:

During the Court hearing on October 10, 2018, Plaintiffs' counsel sought leave to file a request for subpoenas to third parties. Before he did as the Court allowed in a later filing, he decided to file an odd "status letter," which has no apparent purpose (it seeks nothing) other than to feed the media barrage Plaintiffs seems to relish.

Notwithstanding that this Court afforded Mr. Benomar until October 31, 2018 by which to file his motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Mr. Broidy's counsel demanded by email that Mr. Benomar provide to him by the next morning "Mr. Benomar's diplomatic rank, when that rank was conferred, when notice was provided to the United States, and what type of passport and U.S. visa Benomar uses to gain access to the United States." Plaintiffs' counsel's insistence that Mr. Benomar comply with his demands now seems to have been a device to make a public filing and little more than that.

It is especially unclear why Plaintiffs' counsel would complain that Mr. Benomar's September 28, 2018 three-page pre-motion letter did not contain all of the points and arguments that would be included in the actual motion and supporting memorandum that the rules allow to be twenty-five pages. The complaint of Plaintiffs' counsel is even more curious in light of the content of the October 10, 2018 hearing. Even if there were any need or requirement for Mr. Benomar to further explain why the misdirected Complaint filed by Elliot Broidy has to be dismissed before the actual motion to dismiss is filed in three weeks, Plaintiffs' counsel got that explanation at the hearing. For example, as to the basis for the assertion of diplomatic immunity, Counsel for Mr. Benomar clearly stated:

> Article 39 of the Vienna Conference, which we will show you or you can find out yourself, could not be clearer that it says, Every person entitled to privileges and immunities shall enjoy them, quote, "from the moment he enters the territory, if already in the territory, from the moment when his appointment is notified to the Ministry of Foreign Affairs of the country involved." Our brief, our memo, and our exhibits will show you that that



> notification to the United States has occurred for him to have full diplomatic immunity at the moment the notification occurred. That's what the Vienna Conference indicates as the triggering moment.

Oct. 10 Tr. at 9:4-14. The pre-motion conference was not scheduled to be, nor was it, a hearing on the to-be-filed motion to dismiss. The Court instead set a briefing schedule that will afford the parties the opportunity to fully litigate their arguments. That is how it works. Why Plaintiffs' counsel decided to file anything weeks before the issues would be addressed in the normal, proper manner cannot be for any reason that will make that briefing faster, fuller or more helpful to the Court.

To the extent this filing was somehow intended to address the issue of whether Plaintiffs would ask anything of the U.S. Department of State, their letter does not advance their cause. At the hearing, Mr. Benomar stated his position that the Vienna Convention on Diplomatic Relations and all applicable case law make clear that a person has had status immunity from the moment he was appointed to serve by his requesting country and notification was given to the United States. Mr. Benomar enjoys that status. Because Mr. Benomar is relying on the plain language of an international convention to which the United States is a signatory, the statutory law that codifies it, and ample case law that interprets it, he not only sees no reason to seek guidance from the State Department, but does not even know what it is that would be asked of the State Department.[1] *See generally* Oct. 10 Tr. at 25. *See also Devi v. Silva*, 861 F. Supp. 2d 135, 140–41 (S.D.N.Y. 2012) ("At least where the basis for diplomatic immunity is clearly established, there is no need for a formal suggestion of immunity by the United States.")

Indeed, at the hearing, Plaintiffs' counsel indicated that he was not raising the question so much for himself but instead wanted to know whether **Mr. Benomar** intended to seek State Department guidance. *See* Oct 10. Tr. at 25:16-18 (emphasis added) (Wolosky) ("The question was really more directed to counsel [Mr. Lowell] as to whether or not *he* contemplates it."). He now has his answer. Indeed, in the email exchange he quotes, counsel for Mr. Benomar also pointed out that a request to the State Department also risked delaying the motions Plaintiffs stated through counsel they so wanted expedited. In any event, as they note in their October 12, 2018 letter:

> After the Defendant has filed the Rule 12(b)(1) motion and informed the Court and Plaintiffs about the basis for Benomar's claim to immunity, Plaintiffs will advise the Court as to whether we will request or recommend seeking the position of the State Department.

---

[1] Under such circumstances, and based on our research of the issue, we seriously doubt the State Department would even respond to the request or accept such an invitation. *See, e.g.*, *Doe v. Federal Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 11 (D.D.C. 2016) ("The United States ultimately declined . . . to file a brief at this stage of the proceeding."); *Owens v. Republic of Sudan*, 174 F. Supp. 3d 242, 253 (D.D.C. 2016) ("[T]he Court also invited the United States to file a statement of interest concerning any of the issues raised by Sudan's motions, but the United States declined to file such a statement.").



In other words, he will have his chance to request State Department guidance after he receives and reviews Defendant's Motion papers. That too is as it should be – at the proper time and in the proper manner.

Finally, Mr. Wolosky's public assertion that Mr. Benomar's positions have been inconsistent is belied by the very record to which he cites. First, Mr. Benomar did not spring status immunity at the hearing for the first time. Instead, his pre-motion papers cited authority, and explained the standards, for **both** status immunity and functional diplomatic immunity. (Dkt. 25 at 2 ("Under Articles 31 and 37 of the VCDR, diplomatic agents 'enjoy immunity from [the receiving State's] civil and administrative jurisdictions' subject to narrow exceptions not relevant to this litigation, and mission staff enjoy that same immunity for acts performed in the 'course of their duties.'")). Plaintiffs' counsel closes his letter with sharp adjectives ("*sudden* reversal", "*extraordinary* claim"), and accuses Mr. Benomar's counsel of disclaiming reliance on derivative immunity for purposes of Mr. Benomar's motion to dismiss. Context matters. As the Court may recall, the issue at the hearing was that Plaintiffs' counsel was mis-citing the *Moriah* case to support his request for "jurisdictional discovery." As the Court noted, that case concerned the grant of very limited inquiry (5 interrogatories of 44 requested) when the issue was fact-based derivative (agency) sovereign immunity and not full-blown, diplomatic ("status") immunity for which no discovery would be needed.

In any event, whatever the purpose of Plaintiffs' counsel's latest "status" letter, Mr. Benomar will make clear why this lawsuit must be dismissed on the schedule and in the manner directed by the Court.

Respectfully,

/s/ Abbe David Lowell

Abbe David Lowell