

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5875
ADLowell@winston.com

December 2, 2018

**VIA ECF**
Honorable Cathy Seibel, U.S. District Judge
The Honorable Charles L. Brieant, Jr. Courthouse
300 Quarropas Street, Courtroom 621
White Plains, NY 10601-4150

**Re:** *Broidy Capital Management v. Benomar*, No. 18-CV-6615-CS-LMS
**Pre-Motion Opposition to Request to Amend**

Dear Judge Seibel:

Plaintiffs' latest filing is a thinly-disguised effort to file an unauthorized sort of sur-reply when briefing has already been completed, written in a form (self-serving allegations in a complaint instead of real evidence) that is irrelevant to resolution of the pending motion, and filed in an inappropriate manner (attaching an amended complaint not yet authorized to file). Also, in light of the highly critical articles about Plaintiffs published on the day of the filing, their submission appears to be an attempt to deflect the media reporting about Plaintiffs' questionable relationships with foreign powers involving the misconduct of people in Saudi Arabia and their receipt or attempt to receive vast sums of money through intermediaries to exert unlawful influence in Washington.[1]

**Alleged New Events**. Plaintiffs' excuse for the instant submission is their purported need "to address the new events regarding Defendant's diplomatic immunity," namely, "a blue-bordered State Department identification card" (Dkt. 53 at 1, 2) that they knew at the time they filed their opposition that Mr. Benomar would be receiving. Plaintiffs *knew* from Mr. Benomar's Motion to Dismiss (Dkt. 38 at 6-8) (and their own inquiries to the State Department) that Mr. Benomar was waiting on that identification

---

[1] *See, e.g.,* Vogel, K., *Trump Fund-Raiser Received Laundered Foreign Money, Prosecutors Say*, N.Y. TIMES (Nov. 30, 2018), found at https://www.nytimes.com/2018/11/30/us/politics/broidy-trump-foreign-money.html; Zapotosky, M., *Ex-Justice Dept. Employee Admits to Aiding Lobbying Effort Meant to Shut Down Malaysian Corruption Probe*, WASH POST (Nov. 30, 2018), found at https://www.washingtonpost.com/world/national-security/ex-justice-dept-employee-admits-to-helping-aid-lobbying-effort-meant-to-shut-down-malaysian-corruption-probe/2018/11/30/abbde1b4-f4fd-11e8-aeea-b85fd44449f5_story.html?utm_term=.28b771644eef; Transcript, MSNBC's *The Beat with Ari Melber* (Nov 20, 2018), found at http://www.msnbc.com/transcripts/msnbc-live-with-ari-melber/2018-11-20 (Ambassador Marc Ginsburg stating that Mr. Broidy is "under investigation" and "has been pumping the Saudis before this actual murder that they could get away with this."); *see also* Kirkpatrick, D. & Mazzetto, M., *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. TIMES (Mar. 21, 2018), found at https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html.



Honorable Cathy Seibel<br>
Pre-Motion Opposition to Request to Amend<br>
December 2, 2018<br>
Page 2

card, and they *knew* two days before they filed their opposition brief that the State Department had already recognized his diplomatic credentials.  Plaintiffs actually attached to their opposition an email from the State Department to counsel explicitly advising that the State Department had granted Mr. Benomar his diplomatic credentials. (Dkt. 45-3). The presentment of the "blue-bordered State Department identification card" necessarily follows as a matter of course.  Plaintiffs cannot plausibly claim surprise.

More fundamentally, while they reaffirm their claim that the commercial activities restriction bars immunity in this case, Plaintiffs *already* briefed that issue in their opposition.  *See* (Dkt. 45 at 13-14, 16-18).  Plaintiffs' discussion of the subject stands on its own; it is not affected one way or the other by Mr. Benomar's receipt of his identification card.  Nor does Mr. Benomar's receipt of the card that they knew he would be sent magically afford Plaintiffs yet another chance to brief the issue.

**An Amended Complaint Is Not The Same As Evidence.**  A party's *allegations* in a complaint do not constitute *evidence*. In a factual challenge to the Court's subject matter jurisdiction, Plaintiffs' allegations, whether found in the original complaint, in an amended complaint, or in a fifth iteration of a complaint, have no relevancy.  *Dow Jones & Co. v. Harrods*, *Ltd.*, 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003); *see also Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998), *overruled on other grounds by*, *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014).  ("[I]t was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction.") The Second Circuit instead requires courts to consider "evidence outside the pleadings, such as affidavits" to resolve jurisdictional facts. *Filetech S.A.,* 157 F.3d at 932; *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (For 12(b)(1) motions the court "may not presume the truthfulness of the complaint's factual allegations.").  This Court even pointed out to Plaintiffs that they were free to go outside the complaint in their effort to argue that this Court has jurisdiction over the matter. Oct. 10 Tr. 3:4-6 ("To the extent the motion is going to be made on immunity issues, that I can go outside the complaint, you don't need to amend . . .").  Plaintiffs have already mustered whatever evidence they could to try and establish that Mr. Benomar engaged in commercial activities sufficient to restrict his diplomatic immunity.  They failed to do so for the reasons contained in Defendants' Reply.

Under these circumstances it is not surprising that the authority on which Plaintiffs rely do not support their request.  Plaintiffs rely on *Novie v. Vill. of Montebello*, No. 10-CV-9436 CS, 2012 WL 3542222, at *6 (S.D.N.Y. Aug. 16, 2012).  *Novie* actually undercuts Plaintiffs' arguments.  This Court permitted amendment of the complaint there, but repeatedly advised that the Plaintiff "should not attempt to refine the material already in the [Amended Complaint] or add new claims arising from old facts; rather, they *could only pursue leave to amend to add new claims arising from new facts and to drop claims that they believed to be meritless*."  *Novie*, No. 10-CV-9436 CS, 2012 WL 3542222, at *6 (emphasis added); *see also id.* ("I reminded counsel that any proposed second amended complaint could only add new claims arising from new facts, not refine old claims or add new claims arising from old facts").  The "new evidence" cited by Plaintiffs is Mr. Benomar's new identification card, yet Plaintiffs do not seek to add — or subtract — claims as a result.  Nor does the identification even relate to any of the alleged claims.[2]

---

[2] The two other cases cited by Plaintiffs — *City of New York v. Group Health Inc.,* 649 F.3d 151 (2d Cir. 2011); *Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-4148 CS, 2011 WL 9195046 (S.D.N.Y. Feb. 28,



**Improper briefing.**  Clearly not happy with the fact that the State Department granted Mr. Benomar the very credentials and blue-bordered identification card that Plaintiffs previously conceded should end the inquiry (Dkt. 48 at 4), Plaintiffs misuse the pre-motion process to re-argue the commercial activities exception, first in the pre-motion letter and then in their *24-page* proposed amended complaint.  In the letter, they unremarkably note the theoretical existence of the commercial activities exception to immunity — something that Mr. Benomar first addressed *one month ago* in his Motion to Dismiss (Dkt. 38 at 20-21).  In their self-serving and unsupported proffered amended complaint, they introduce many new adjectives (calling Mr. Benomar "controversial") and sprinkle in some sweeping, uncorroborated and baseless allegations (asserting with no support that Mr. Benomar received "millions of dollars" for commercial activities whether subject to any exception or not).  But Plaintiffs already were put to the test of introducing *evidence* in their opposition brief on the subject and failed to do so.  They devoted only a few pages to the subject in their actual opposition and ground their argument only in misquoting some lines from a third-party deposition.  Plaintiffs have no right to a do-over, much less a do-over based on *allegation* rather than *evidence*.

**Inappropriate Inclusion of the Amended Complaint.**  Plaintiffs' inclusion of the proffered amended complaint to their pre-motion letter is inappropriate.  Their decision to do so, the timing of which comes on the very day of unflattering news articles about their relations with alleged wrongdoers in the Middle East and possible receipt of tens of millions of dollars for influence peddling, is inconsistent with this Court's earlier rejection of their request to file an amended complaint.  In other words, they seek to put the amended complaint before the Court (and public) even though no decision has been made by the Court to allow such a filing to occur. That should not be allowed.

Because a party's unverified and unproven allegations in a complaint are irrelevant in the circumstances here,  and Mr. Benomar's 12(b)(1) motion must instead be resolved on the basis of actual evidence submitted in the motion papers, we ask the Court to defer consideration of any pre-motion conference in respect to Plaintiffs' letter of November 30 for a date *after* the Court's issuance of its decision on Mr. Benomar's pending Motion to Dismiss, which would make Plaintiffs' request moot should the case be dismissed.

Respectfully,

/s/ Abbe David Lowell

Abbe David Lowell

---

2011) — were in the context where the allegations of the complaint *are* relevant (a legally insufficient market for an antirust claim and a motion to dismiss under Fed. R. Civ. P. 12(b)(6) respectively).  These do not support this attempt to file unverified allegations in a 12(b)(1) jurisdiction issue.